IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Delano Scott, | ) | C/A No. 5:07-3571-MBS-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| County of Orangeburg, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This employment discrimination matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendant's motion for summary judgment. (Docket Entry 26.) The plaintiff filed this action pursuant to 42 U.S.C. §§ 2000e et seq. alleging that he has suffered unlawful discrimination on the basis of race in that the defendant has failed to promote him and that the defendant retaliated against him for filing an administrative charge, all in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

**BACKGROUND**

Taking the facts in the light most favorable to the plaintiff, the following facts appear to be undisputed unless otherwise noted. The plaintiff, Delano Scott ("Scott"), an African American male, has been employed with the defendant, County of Orangeburg ("County"), since 1998 as a commercial plans reviewer in the Building Inspection Department. Scott holds a bachelor's degree in Civil Engineering Technology from South Carolina State University. Prior to coming to work for the County, Scott had worked as a field engineer, construction engineer, and construction inspector in Washington, D.C.; Baltimore, Maryland; and Atlanta, Georgia. In those positions, he worked on

PJG

construction projects involving a mass transit system, an interstate highway project, and an airport. Additionally, Scott has worked in South Carolina in positions assisting minority contractors. Since commencing employment with the County eleven years ago, Scott has not been promoted. Specifically, this dispute centers around his failure to obtain two positions: Facilities/Construction Manager, and Building Official.

In 2006, Scott, along with at least three other County employees, applied for the newly created position of Facilities/Construction Manager ("F/CM"). The qualifications for this position, as advertised by the County, included:

> Associate's degree (A. A.) or equivalent from a two-year college or technical school in engineering and a minimum of three to five years of experience in the field of building construction in a supervisory capacity. The individual selected will have the ability to apply common sense understanding, judgment and the capacity to make sound and reasonable decisions. Must possess a valid SC driver's liscense [sic].

(Scott Dep. Ex. 3, Docket Entry 26-4 at 85.) The position was awarded to a white candidate, Butch Fogle, who, as Building Official, had been Scott's supervisor. Scott contends that the F/CM position was created specifically for Fogle and that no other candidates were interviewed.[1]

Once Fogle assumed his duties as F/CM, his prior position of Building Official was vacant. In late August of 2006, the County Administrator, Bill Clark, and the Deputy Administrator, Harold Young, met with Scott and another County employee, Harry Wiggins. At that meeting, Clark and Young informed Scott and Wiggins that the Building Official position would be posted, they could

---

[1]Apparently neither Scott nor Fogle had a spotless employment record. In 2003, Scott was suspended for five days for altering a temporary certificate of occupancy. Fogle, according to Scott, had been cited for an infraction involving drinking on the job. Scott contends that the F/CM position was created for Fogle to move him out of the Building Official position due to problems he was allegedly experiencing in that job, (see Pl.'s Br. at 3, Docket Entry 28 at 3; see also Scott Dep. at 53-56, 71, 81, 83-84, Docket Entry 28-10 at 54-57, 72, 82, 84-85.), and because Fogle being protected by the County Administrator, Bill Clark (Scott Dep. at 53, Docket Entry 28-10 at 54).

PJG

both apply to be considered for the position, and "may the best man win." (See Young Dep. at 35-36, Docket Entry 26-9 at 14-15, Docket Entry 28-12 at 36-37.) Upon receiving this news, Wiggins immediately began to promote himself for the position, touting his qualifications. Both Clark and Young viewed Wiggins's behavior as inappropriate. (Clark Dep. at 51-52, Docket Entry 28-11 at 52-53; Young Dep. at 33-34, Docket Entry 28-12 at 34-35.) In turn, Scott asserted that he was insulted that Wiggins would even be considered a viable competitor to him for the position and stated that he would not work for Wiggins if Wiggins were selected. (Scott Dep. at 58-71, Docket Entry 28-10 at 59-72; Clark Dep. at 81-83, Docket Entry 28-11 at 82-84; Young Dep. at 32-37, Docket Entry 28-12 at 33-38.) The meeting ended abruptly.

On October 12, 2006, Scott filed a charge of discrimination ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC"). In his EEOC Charge, which was completed on EEOC Form 5, Scott checked the box indicating that he had been discriminated against based upon his race. In the narrative portion of his EEOC Charge, Scott complained that he had not been awarded the F/CM position and that it had been filled with a less qualified white employee (Fogle). Additionally, he complained that Wiggins, whom he asserted was a less qualified white employee, was being considered along with him for the then-vacant Building Official position. This administrative charge was the only one filed by Scott.

The County advertised the Building Official position as requiring that a candidate

[p]ossess a Bachelor's Degree in engineering, architecture, and or a Building Official Certification in the State of South Carolina and five (5) years of experience in a County building inspection department encompassing all aspects of statutory building code review, assessment, permit, compliance, or any equivalent combination of education and experience that provides the required knowledge, skills and abilities.

PJG

Proficient verbal, written and communication skills. Must have working knowledge of Microsoft Office products, office machines and business procedures. The individual selected will have the ability to apply common sense understanding, judgment and the capacity to make sound and reasonable decisions. Must possess a valid SC driver's license.

(Scott Dep. Ex. 5, Docket Entry 26-4 at 91, see also Docket Entry 28-3.)  Although Scott asserts that Young had informed him that, following the stormy meeting in late August, Clark no longer wanted him to apply for the position,[2] both Scott and Wiggins applied, along with several applicants that did not already work for the County.  In November of 2006, the job was awarded to one of those outside applicants, Bruce Spicher, who is white.

An Orangeburg County ordinance ("Ordinance") provides as follows:

**Sec. 2-321. Purpose.**
The purpose of the rules and regulations set out in this division shall be to establish a consistent personnel policy for the county and to establish guidelines governing employees of the county. Accordingly, this division shall not apply to employees of any outside agency that may receive appropriations from the county. This division shall describe the county's general philosophy concerning policies and procedures and shall in no way form a contract between the employees and the county. The provisions of this division are subject to change at any time upon being amended by ordinance of the county council. Further, notwithstanding any of the provisions in this division, all employees of the county are employees-at-will who may quit at any time for any or no reason and who may be terminated at any time for any or no reason.

* * *

**Sec. 2-343. Procedures; selection process.**

* * *

*(c)       Promotions and transfers.*
(1)       In order to provide upward mobility for the employees in county service, it shall be the policy of the county to consider applications from persons currently employed before applications from the public are considered. A notice will be posted on the bulletin board of each vacancy that occurs stating the position, the minimum training and experience requirements, the salary range, and how and when to apply.

---

[2]Young denies making this statement to Scott.  (Young Dep. at 20-21, Docket Entry 28-12 at 21-22.)



(2)     First consideration shall be given to those persons in the unit or department where the vacancy occurs for whom the vacant position would represent a promotion. If none of these persons are selected to fill the vacancy, all other county employees requesting consideration will be considered. Finally, any other applicants may be considered.

(Docket Entry 28-6 at 9, 13.)  Young testified that he selected Spicher rather than Scott or Wiggins because he felt that, based on the demonstrated friction between Wiggins and Scott, an outsider would more effectively lead the Department.  (Young Dep. at 42-46, Docket Entry 28-12 at 43-47.)

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.

PJG

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine

whether a party's offered evidence is legally sufficient to support a finding of discrimination and

look at the strength of a party's case on its own terms.  The Reeves Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148.  The Court of Appeals for the Fourth Circuit has stated that the Reeves

Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as

a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie

case, the probative value of the proof that the employer's explanation is false, and any other evidence

that supports the employers' case and that properly may be considered on a motion for judgment as

a matter of law.'"  Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49)).

**B.      Exhaustion of Administrative Remedies**

"Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by

bringing a charge with the EEOC."  Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.

2000); see also 42 U.S.C. § 2000e-5(f)(1).  The allegations contained in the administrative charge

of discrimination generally limit the scope of any subsequent judicial complaint.  King v. Seaboard

Coast Line R.R., 538 F.2d 581, 583 (4th Cir. 1976) (stating that a subsequent civil suit "may

encompass only the 'discrimination stated in the [EEOC] charge itself or developed in the course of

a reasonable investigation of that charge'") (quoting Equal Employment Opportunity Comm'n v.

PJG

Gen. Elec., 532 F.2d 359, 365 (4th Cir. 1976)); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit."). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred). "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. See, e.g., Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (stating that "that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite").

C.      **Burden Shifting in Employment Cases**

The parties agree that the McDonnell Douglas burden-shifting framework should be applied in this matter. A plaintiff may demonstrate discrimination or retaliation through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the defendant to produce

PJG

evidence of a legitimate, nondiscriminatory reason for the adverse action.  Holland v. Washington

Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).  The defendant's burden "is a burden of production,

not persuasion."  Id.  Once a defendant meets this burden by producing affidavits or testimony

demonstrating a legitimate, nondiscriminatory reason, "'the McDonnell Douglas frame-work—with

its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel*

*non*.'"  Holland, 487 F.3d at 214 (quoting Reeves, 530 U.S. at 142).

 In other words, if the defendant meets the burden to demonstrate a legitimate,

nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that

the proffered reason was "'not its true reason[], but [was] a pretext for discrimination.'"  Holland,

487 F.3d at 214 (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir.

2004)).  Accordingly, the plaintiff's burden of demonstrating pretext "'merges with the ultimate

burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'"

Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)); see also Diamond

v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005).  To meet this burden, the

employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue

or that the employer's proffered explanation is unworthy of credence.  Holland, 487 F.3d at 214

(quoting Burdine, 450 U.S. at 256).

 "'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the

employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer

unlawfully discriminated.'"  Holland, 487 F.3d at 215 (quoting Reeves, 530 U.S. at 148).  However,

if the plaintiff creates only "a weak issue of fact as to whether the employer's reasons were untrue

and there was abundant and uncontroverted independent evidence that no discrimination had

PJG

occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "'the probative value of the proof that the employer's explanation is false.'" Id. (quoting Reeves, 530 U.S. at 149). To carry her "merged" burden to establish pretext and intentional discrimination, a plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason for the challenged conduct.'" Holland, 487 F.3d at 218 (quoting Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997)) (emphasis added) (discussing plaintiff's retaliation claim); see also Burdine, 450 U.S. at 256 (discussing merging of plaintiff's burdens).

**D.     Scott's Claims**

**1.      Failure to Promote**

The parties agree that to establish a prima facie case of discrimination based on a failure to promote, Scott must show:  (1) that he is a member of a protected class; (2) that his employer had an open position for which he applied or sought to apply; (3) that he was qualified for the position; and (4) that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. See Evans v. Technology Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). The first two elements are not at issue with regard to any of Scott's claims.

**a.      F/CM Position**

The parties disagree as to whether Scott met the qualifications for the F/CM position. The crux of this point of contention centers around whether or not Scott possessed the requisite supervisory experience for the F/CM position as listed by the County. The County contends that, while Scott had experience in working on highway, mass transit, airport, and parking projects, he did not have supervisory experience in *building* construction as required for the F/CM position.

PJG

This dispute does not preclude summary judgment in this case, however. Even assuming that Scott has presented evidence from which a reasonable jury could find that he was qualified for the F/CM position, he cannot meet his burden to establish that the County's reasons for not selecting him were pretextual and that racial discrimination was the real reason. See Holland, 487 F.3d at 214 (stating that once a plaintiff establishes a prima facie case and the defendant offers a legitimate, nondiscriminatory reason, the plaintiff must demonstrate that the reason was pretextual). The law is well settled that it is the employer's prerogative to establish the qualifications for a position, and that a plaintiff must, to establish pretext, show that he was the better qualified candidate with respect to those qualifications that the employer deemed important. See EEOC v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 671 (4th Cir. 1983), rev'd in part on other grounds sub nom. Cooper v. Fed. Reserve Bank of Richmond, 464 U.S. 932 (1983), (holding that an employer has the right to establish the qualifications that are "necessary or preferred" for a position and the plaintiff must show not only that he meets these qualifications to establish a prima facie case but also that he is superior to the selected candidate to establish pretext); Evans v. Technologies Applications & Serv. Co, 80 F.3d 954, 960-61 (4th Cir. 1996) (emphasizing that a plaintiff's own self-interested assessment of his qualifications for a particular position is irrelevant and that it is the decision maker's assessment that matters); Hux v. City of Newport News, Va, 451 F.3d 311, 315 (4th Cir. 2006) (holding that a plaintiff cannot show pretext "simply [by] compar[ing] [him]self to other employees on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination"). Other than his assertion that he was better qualified than Fogle, Scott has offered no evidence that the County's stated reason for selecting Fogle rather than Scott (or any other candidate) was false. See Holland, 487 F.3d at 215.

PJG

Significantly, Scott's own proffered explanation for the County's selection of Fogle undermines his Title VII claim of race discrimination. Scott claims that the County created the F/CM position specifically for Fogle to move him out of the Building Official position, and that no other candidate was seriously considered for the F/CM position. (Scott Dep. at 51-56, 75, 144-45, Docket Entry 28-10 at 52-57, 76, 145-46; see also Pl.'s Br., Docket Entry 28 at 3.) However, the law is again well settled that preselection of a candidate for a position, without proof that the preselection was racially motivated, does not violate Title VII. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 271 (4th Cir. 2005) (holding that evidence that a supervisor preselected an employee for promotion is insufficient for a jury to conclude that the employer's explanation was a pretext for race discrimination); Jackson v. Winter, 497 F. Supp. 2d 759, 770 (4th Cir. 2007) ("Preselection, even if accompanied by subsequent manipulation to guarantee that the preselected candidate gets the position over more qualified candidates, does not equate automatically to discrimination."). As the United States Court of Appeals for the Fourth Circuit has noted, evidence of preselection is not probative of discriminatory intent because it "work[s] to the detriment of all applicants for the job, black and white alike." Blue v. United States Dep't of the Army, 914 F.2d 525, 541 (4th Cir. 1990). Notably, Reggie Brewer, a white employee who also applied for the F/CM position, was equally disadvantaged by the County's alleged preselection of Fogle for that job. Thus, "while preselection may establish that an employee was unfairly treated, it does not by itself prove racial discrimination." Anderson, 406 F.3d at 271 (internal citation omitted).

Thus, the only evidence of pretext offered by Scott—his own asserted superior qualifications to Fogle and the County's alleged preselection of Fogle for the F/CM position—is, under controlling precedent, not probative to show that the County's explanation was false and that *race*

PJG

*discrimination* was the real reason the County failed to promote Scott. An adverse employment

decision motivated by a non-merit based reason—such as friendship, nepotism, or romantic

relationship—is not protected under Title VII. See, e.g., Becerra v. Dalton, 94 F.3d 145, 149-50 (4th

Cir. 1996) (assuming that the commanding officer promoted a female employee not because she was

the most qualified but because she was engaged in sexual relationship with him, as the male plaintiff

claimed, preference for paramour did not violate the plaintiff's rights under Title VII)); Jamil v.

Sec'y, Dep't of Defense, 910 F.2d 1203, 1207 (4th Cir. 1990) (stating that if the discharge was

motivated by a plaintiff's whistleblowing about mismanagement and cronyism as he maintained, his

Title VII retaliatory discharge claim failed as matter of law because Title VII does not prohibit

retaliation for complaining about such); Autry v. North Carolina Dep't of Human Res., 820 F.2d

1384 (4th Cir. 1987) (holding that the promotion of a white employee rather than a black plaintiff,

based on the selecting official's friendship and political alliance with promoted employee, is not

racial discrimination under Title VII). Accordingly, this claim fails as a matter of law.

### b.      Building Official Position

### i.      Exhaustion of Administrative Remedies

As stated above, Scott must exhaust his administrative remedies before filing suit under Title

VII.[3]  Smith, 202 F.3d at 247.  In Jones v. Calvert Group, Ltd., 551 F.3d 297, 303 (4th Cir. 2009),

the United States Court of Appeals for the Fourth Circuit explained that the law remains this circuit

---

[3]In the defendant's motion for summary judgment, the County argues that Scott failed to administratively exhaust his discrete claims of discrimination and retaliation pertaining to the Building Official position. However, by letter dated February 13, 2009, the defendant withdrew this argument as to the retaliation claim based on a subsequent development in the law. (Docket Entry 30.)  However, it is unclear whether the defendant is withdrawing its exhaustion argument with respect to Scott's race discrimination claim as to the Building Official position. Accordingly, the court will address it.

PJG

that a claim of retaliation for the filing of an EEOC charge does not require the filing of a new charge so long as the retaliation charge is "like or reasonably related to and growing out of such allegations." Id. at 302 (quoting Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992)). Therefore, Scott was not required to separately exhaust his claim that the defendant retaliated against him for filing his EEOC charge. Moreover, while a claim will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex, the allegedly discriminatory act of denying Scott the promotion to Building Official is reasonably related to the acts complained in the October 12, 2006 EEOC charge relating to the Building Official job—the County's alleged consideration of a less qualified white candidate for that very job. See id. at 300 ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'") (quoting Evans, 80 F.3d at 963). Accordingly, the court turns to the merits of Scott's claims of retaliation and discrimination.

### ii. Merits

There does not appear to be a dispute that Scott can establish a prima facie case of race discrimination based on a failure to promote with regard to the Building Official position. However, the parties disagree as to whether Scott can establish a prima facie case for retaliation,[4] as the defendant contends that Scott cannot establish a causal connection between the filing of his EEOC

---

[4]To establish a prima facie case of retaliatory failure to promote, Scott must show: (1) that he filed a charge of discrimination with the EEOC, (2) that the County did not promote him, and (3) that the filing of the charge was causally connected to the failure to be selected for promotion. See Holland, 487 F.3d at 218.



Charge and the failure to be selected for the promotion. Again, this dispute regarding the prima facie case does not preclude summary judgment in this case. Even assuming that Scott has presented evidence from which a reasonable jury could find a causal connection, he cannot meet his burden to establish that County's reasons for not selecting him were pretextual and that racial discrimination or retaliation was the real reason. See Holland, 487 F.3d at 214 (stating that once a plaintiff establishes a prima facie case and the defendant offers a legitimate, nondiscriminatory reason, the plaintiff must demonstrate that the reason was pretextual).

Scott concedes that he has no direct evidence that he was not promoted to the Building Official position because of his race or in retaliation for filing an EEOC charge alleging discrimination over the F/CM position. (Scott Dep. at 94, 119-20, Docket Entry 28-10 at 95, 120-21.) As stated above, for a claim of discrimination based on a failure to be promoted, a plaintiff must, to establish pretext, show that he was the better qualified candidate with respect to the qualifications established by the employer for that position. See EEOC v. Fed. Reserve Bank of Richmond, 698 F.2d at 671. Further, as the plaintiff bears the "ultimate burden of persuading the court that he has been the victim of intentional discrimination," he "may meet this burden either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992) (internal quotation omitted).

Scott asserts that he was better qualified than Spicher based on the fact that he has a four-year degree. The Building Official job description states that applicants must

> [p]ossess a Bachelor's Degree in engineering, architecture, *and or* a Building Official Certification in the State of South Carolina and five (5) years of experience in a County building inspection department encompassing all aspects of statutory building

PJG

code review, assessment, permit, compliance, or any equivalent combination of education and experience that provides the required knowledge, skills and abilities.

(Scott Dep. Ex. 5, Docket Entry 26-4 at 91, see also Docket Entry 28-3) (emphasis added).  Spicher had a building official certification (but no bachelor's degree) and eight years of experience as a senior inspector in the Charleston County's building department, (Spicher Dep. at 20-21, Docket Entry 26-8 at 3-4; Spicher Dep. Ex. 3, Docket Entry 26-8 at 6-10).  Scott had a bachelor's degree in civil engineering technology (but no building official certification) and eight years of experience as a commercial plans examiner in the Orangeburg County Building Inspection Department.  (Scott Dep. at 42, 44, 112, Docket Entry 28-10 at 43, 45, 113; Scott Dep. Ex. 10, Docket Entry 26-4 at 94-97.)  Scott's assertion that he was better qualified for the position because he has a four-year degree is contradictory to the requirements for the Building Official position listed by the County.  Based on the requirements deemed important by the County, it appears Spicher and Scott were both qualified for the position.  Even if Scott had a superior educational background, the defendant may consider both objective and subjective factors in determining whom to select for the position.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981) ("[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability . . . ."); Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1130 (4th Cir. 1995) (affirming summary judgment on a failure to promote claim on the basis that even if the plaintiff's education was superior to the selectee's, the employer could properly take into account both the objective factors "and the more subjective factors like his good interpersonal skills and his ability to lead a team").

PJG

Scott appears to attack the sufficiency and credibility of the reasons given for failing to promote him as evidence of pretext. Young testified that there were several considerations that led the defendant to choose Spicher instead of Scott. Spicher, unlike Scott, was already certified as a Building Official. While under South Carolina law Scott could have obtained that certification within two years of hire, Spicher already had that certification, while Scott had failed the examination twice. Spicher had eight years' experience as a supervisor in the building inspection department in one of the State's largest and busiest counties, Charleston. Young also stated that he wanted an outsider after Scott's angry reaction to Wiggins's argument as to why he should be selected for the Building Official position. While Young acknowledged that Scott's reaction may have been understandable, it led him to question whether hiring someone within the office would result in "issues" in that department. (Young Dep. at 31-37, 43-46, 59-61, 66-67, 83-84, Docket Entry 28-12 at 32-38, 44-47, 60-62, 67-68, 84-85.) Scott has not demonstrated that these reasons are unworthy of credence or presented any evidence from which a reasonable jury could conclude that a discriminatory or retaliatory reason more likely motivated the employer to fail to promote Scott. Wileman, 979 F.2d at 33. Accordingly, these claims must fail as a matter of law.

PJG

## 2. Breach of Contract Claim

Scott also asserts a state law claim for breach of contract based solely upon the Ordinance, quoted above.[5] Generally, statutes and ordinances do not create contractual rights. Layman v. State, 630 S.E.2d 265, 268 (S.C. 2006) (statute); Alston v. City of Camden, 471 S.E.2d 174 (S.C. 1996) (ordinance). However, a contract may be found to exist if the statute or ordinance indicates that the legislature intended to bind itself contractually. Layman, 630 S.E.2d at 268. Under South Carolina law, for a contractual right to be created by a statute, such a right must be expressly found in the language of the legislation. Id. The legislature may express its intent to bind itself contractually to the terms of a statute by fixing obligations in the statute, requiring affirmative actions by both the government and those affected by the statute, and using "contractually significant language." Some examples of contractually significant language include "eligible," "comply," "requirements," and "agree." Id.; but cf. Anonymous Taxpayer v. S.C. Dep't of Revenue, 661 S.E.2d 73 (S.C. 2008) (rejecting the argument that S.C. Code Ann. § 9-1-1680 (1986), which contained the words "right" and "accrued or accruing," created a contract) and Alston, 471 S.E.2d at 178 n.2 (finding that mandatory language such as the word "shall" did not create a contract). Simply describing the terms

---

[5]Scott relies upon several general contract law cases in support of his breach of contract claim; however, because these cases do not involve allegations of a contract based on a legislative act such as a statute or ordinance, they are not helpful in analyzing Scott's claim that the Ordinance creates a contract. Further, the court finds that South Carolina case law regarding statutory contracts precludes Scott's argument that the Ordinance itself constitutes an employment handbook or policy manual which would otherwise require a conspicuous disclaimer. (Pl.'s Br., Docket Entry 28 at 22); see, e.g., S.C. Code Ann. § 41-1-110 (requiring a handbook or personnel manual disclaimer to be conspicuous and applying to post June 30, 2004 contracts); Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 697 (S.C. 2005) (requiring a conspicuous disclaimer to be inserted into an employee handbook to prevent the employer from being bound by it). Far from requiring a conspicuous disclaimer, South Carolina case law makes clear that to create a contract, a statute or ordinance must contain express language evidencing an intent by the government to bind itself contractually. Layman v. State, 630 S.E.2d 265, 268 (S.C. 2006).

PJG

of public employment does not create a contract.  See Layman, 630 S.E.2d at 269; Alston, 471 S.E.2d at 177.

An examination of the Ordinance at issue shows that its language expresses no intent on the part of the County to bind itself contractually.  Cf. Layman, 630 S.E.2d at 269.  By contrast, the Ordinance expressly states that it does not create contractual rights.  (Ordinance, Sec. 2-321, Docket Entry 28-6 at 9.)  Further, the Ordinance does not fix obligations, require affirmative actions by the County and the employees, or use contractually significant language such as that identified in Layman.  Rather, it merely describes the terms of public employment.  Accordingly, Scott's breach of contract claim based upon the Ordinance must fail.  See Tidewater Supply Co. v. Industrial Electric Co., 171 S.E.2d 607, 608 (S.C. 1969) ("An action for damages for breach of a contract is predicated on the existence of the contract.").

## RECOMMENDATION

The County is entitled to judgment as a matter of law.  Even if Scott has presented evidence to establish a prima facie case of discrimination or retaliation, he cannot demonstrate that the County's stated reasons for failing to award him the F/CM and Building Official positions were pretextual and that race discrimination or retaliation was the real reason.  Holland, 487 F.3d at 215.  Moreover, Scott's state law claim for breach of contract fails as a matter of law.  Layman, 630 S.E.2d at 268; Alston, 471 S.E.2d at 177; Tidewater Supply Co., 171 S.E.2d at 608.  Accordingly, the County's motion for summary judgment (Docket Entry 26) should be granted.

_____
July 24, 2009                                        Paige J. Gossett
Columbia, South Carolina                    UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

Page 18 of  19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).